GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff-Appellee,
v. ERNEST KETTELSON, Defendant-Appellant.

Second District   No. 2—91—0265

Opinion filed October 17, 1991.—Rehearing denied November 4, 1991.

Ernest S. Kettelson, of Kettelson Law Offices, Ltd., of Joliet, appellant *pro se.*

Darren L. Besic, of Simpson & Cybak, of Chicago, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Ernest Kettelson, appeals from an order of the circuit court of Du Page County entered in favor of plaintiff, General Motors Acceptance Corporation (GMAC), pursuant to Supreme Court Rule 304 (134 Ill. 2d R. 304). The order in question, entered June 8, 1990, dismissed, *inter alia,* count V and the "cross claim" on behalf of a class contained in defendant's first amended counterclaim. The order also denied defendant's motion to certify the class. On appeal, defendant contends that (1) the finance charge imposed in the retail installment contract was usurious and (2) the usury issue satisfies all the elements to be certified as a class action. We affirm.

On August 19, 1985, defendant entered into a retail installment sales contract with Talty Chevrolet, Buick, Cadillac, Inc., for the purchase of a 1985 Cadillac Seville. The balance of $25,106.10 was to be paid in 48 monthly installments of $673.53 beginning September 17, 1985. The annual percentage rate was 13%, with a total finance charge of $7,223.34. Defendant paid 36 monthly payments, but stopped paying in August 1988.

Plaintiff filed a complaint on November 9, 1988, seeking possession of the vehicle or, in the alternative, damages equivalent to the value of the vehicle. Defendant filed an answer and a three-count counterclaim. Count I alleged the contract was void *ab initio* for failure to comply with the advertised finance rate and for violations of the Federal Consumer Credit Protection Act (15 U.S.C. §1601 *et seq.* (1988)), the Consumer Installment Loan Act (Ill. Rev. Stat. 1987, ch. 17, par. 5401 *et seq.*) and the Interest Act (Ill. Rev. Stat. 1987, ch. 17, par. 6401 *et seq.*). Count II alleged fraud in that the number of payments under the contract had been changed from 36 to 48. Count III alleged the finance charge imposed was a usurious interest rate in violation of Illinois law.

After the trial court dismissed counts I, II and III of defendant's counterclaim without prejudice, defendant filed his first amended counterclaim. The amended counterclaim alleged fraud in count IV, usury in count V and contained a "cross claim" for usury on behalf of a class. On June 8, 1990, the trial court entered an order dismissing counts IV, V and the "cross claim," with prejudice, and denied defendant's motion to certify the class. The defendant filed a motion to vacate the order or, alternatively, to enter an order for interlocutory appeal pursuant to Supreme Court Rule 308.

On September 21, 1990, the court denied defendant's motion, but granted leave to file a second amended counterclaim. The defendant filed a second amended counterclaim on October 11, 1990, which included only one count, count IV based on fraud. On the same day, defendant filed a motion pursuant to Supreme Court Rule 304, requesting the trial judge to find no just reason for delaying enforcement or appeal of the court's order dismissing count V, the "cross claim" and the denial to certify the class. The motion requesting this written finding was denied on November 30, 1990.

On February 14, 1991, the parties agreed to dismiss plaintiff's complaint and defendant's second amended complaint. As a condition to the settlement, the order of June 8, 1990, dismissing count V and the "cross claim" for a class action, was deemed final and appealable by the trial judge. Notice of appeal was filed on March 4, 1991.

The court in *Spitz v. Goldome Realty Credit Corp.* (1991), 210 Ill. App. 3d 215, announced the standard that applies in reviewing an order granting a motion to dismiss:

> "A reviewing court *** must determine whether the allegations of the complaint interpreted in the light most favorable to the plaintiff are sufficient to set forth a cause of action

upon which relief can be granted. Although the granting of a motion to dismiss is within the discretion of the trial court, the reviewing court can exercise its own judgment in determining if such a motion should be entertained." *Spitz*, 210 Ill. App. 3d at 218.

■ Defendant argues that the finance charge exacted by the plaintiff is a usurious "interest rate." As authority, defendant cites sections 4(1) and 4a(a) of the Interest Act (Ill. Rev. Stat. 1989, ch. 17, pars. 6404(1), 6410(a)). In interpreting section 4a(a), the defendant believes that statute disallows an interest rate of greater than 9% if the amount financed exceeds $25,000. This interpretation is misplaced. The statute reads:

"On money loaned to or in any manner owing from any person, whether secured or unsecured, *except where the money loaned or in any manner owing is directly or indirectly for the purchase price of real estate or an interest therein and is secured by a lien on or retention of title to that real estate or interest therein, to an amount not more than $25,000 (excluding interest) which is evidenced by a written instrument providing for the payment thereof in 2 or more periodic installments over a period of not more than 181 months from the date of the execution of the written instrument,* it is lawful to receive or to contract to receive and collect either:

(i) interest in an amount equivalent to interest computed at a rate not exceeding 9% per year ***." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 17, par. 6410(a).

The $25,000 limitation only applies to the real estate exception, not to the entire statute. But, the defendant is correct in interpreting this statute to mean that an interest rate imposed on money loaned may not exceed 9%, absent an exception.

■■ The next issue is whether a retail installment contract is a "loan" so that the Illinois Interest Act applies. Usury is defined as an illegal profit received by the lender on a sum of money loaned to a borrower. (*Tyrcha v. Wesolek* (1989), 187 Ill. App. 3d 354, 357.) The elements of usury are: (1) a loan or forbearance; (2) a loan of money or something circulating as money; (3) the loan must be repayable absolutely; and (4) something in addition to lawful interest must be required. (*Tyrcha*, 187 Ill. App. 3d at 357.) But, if the transaction involves a sale, it is not a "loan" subject to the interest limitations:

"Furthermore, it is well settled that the usury statute applies only to those contracts which in substance involve a loan of money or forbearance to collect money due [citation] ***. A *bona fide* sale is not a loan *** and is not subject to the usury statute. [Citations.] *** The parties to the contract could agree that [purchaser] would pay interest at a rate higher than the maximum rate provided in the usury statute." *Computer Sales Corp. v. Rousonelos Farms, Inc.* (1989), 190 Ill. App. 3d 388, 392.

Illinois courts have held differing transactions to be sales, and not loans subject to the Illinois Interest Act. (*Computer Sales Corp.*, 190 Ill. App. 3d 388 (installment sale of computer equipment); *Tyrcha*, 187 Ill. App. 3d 354 (installment sale of stock); *First National Bank v. Larkins* (1983), 111 Ill. App. 3d 953 (installment sale of property); *Johnson v. Sears Roebuck & Co.* (1973), 14 Ill. App. 3d 838 (department store revolving charge accounts).) The purchase and sale of an automobile is analogous to these situations, and, as such, no section of the Illinois Interest Act cited by defendant pertains to the contract in question.

The statute that is relevant in this appeal is section 21(c) of Motor Vehicle Retail Installment Sales Act (Act), which states:

"(c) Notwithstanding the provisions of any other Statute, and notwithstanding the rate limitations expressed in subdivisions (a) and (b) of this Section, for motor vehicle retail installment contracts executed after the effective date of this amendatory Act of 1981, there shall be no limit on the finance charges which may be charged, collected and received." Ill. Rev. Stat. 1989, ch. 121½, par. 581.

The Act applies only to retail installment contracts, defined in section 2.5 as "an instrument *** prescribing the terms of a retail installment transaction." (Ill. Rev. Stat. 1989, ch. 121½, par. 562.5.) A "[r]etail installment transaction" is "a credit sale of a motor vehicle by a retail seller to a retail buyer for a deferred payment price payable in *** installments." (Ill. Rev. Stat. 1989, ch. 121½, par. 562.4.) Plaintiff is a "sales finance agency," defined as one "engaged *** in the business of purchasing or making loans upon the security of retail installment contracts." Ill. Rev. Stat. 1989, ch. 121½, par. 562.11.

A credit union is not a sales finance agency because it does not purchase or make loans based on the assignment of retail installment contracts. (*Micro Switch Employees' Credit Union v. Collier* (1988), 175 Ill. App. 3d 828, 831.) Similarly, a credit union

automobile installment loan is not a retail installment transaction because a third party is providing the money with which to purchase the vehicle, in other words, a loan. (*Micro Switch*, 175 Ill. App. 3d at 831.) But, GMAC is a sales finance agency dealing with retail installment contracts as defined under the Act. The retail installment contract was executed after September 25, 1981, the effective date of the amendment to section 21, which added subsection (c). Since section 21(c) explicitly supersedes the other provisions within the statute or any other statute, there was no statutory limit on the finance charge exacted by plaintiff.

Defendant argues that plaintiff has charged a 13% "interest rate," which is different than a "finance charge." As support for this argument, defendant cites the answer to defendant's interrogatory asking the interest rate the plaintiff used to determine the finance charge, which was answered 13%. Defendant also relies on plaintiff's failure to respond to defendant's request for admission that the interest rate stated in the contract is 13% and that the interest rate exceeded a rate allowed under Illinois law.

The true answer lies in the interpretation of the retail installment contract, not with the plaintiff's interchangeable use of the phrases "finance charge" and "interest rate." The meaning of a written contract is ascertained by the contract language and is ordinarily a question of law. (*Szczerbaniuk v. Memorial Hospital* (1989), 180 Ill. App. 3d 706, 713.) The contract explicitly states the "annual percentage rate" is 13%. The "finance charge" is the monetary amount determined by computing the amount financed with the annual percentage rate. Section 21(c) of the Act provides no limit on the amount of finance charges assessed. Thus, the finance charge was not usurious.

Because we find the finance charge not to be usurious, the issue concerning the propriety of a class action is moot. We affirm the order of the trial court.

Affirmed.

WOODWARD and McLAREN, JJ., concur.